### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### Houston Division

| | |
|---|---|
| BANILLA GAMES, INC., <br><br>        Plaintiff, <br><br>   v. <br><br> KWANG "JIM" NO LEE, <br><br> **Serve**:  Kwang "Jim" No Lee <br>     9945 Harwin Drive <br>     Houston, Texas 77036 <br><br>        Defendant. | Civil Action No. <u>  4:26-cv-667  </u> |

## VERIFIED COMPLAINT AND JURY DEMAND

Plaintiff, Banilla Games, Inc. ("**Banilla**" or "**Plaintiff**"), by counsel, alleges the following for its Verified Complaint and Jury Demand against Defendant, Kwang "Jim" No Lee ("**Lee**" or "**Defendant**").

## NATURE OF THE CASE

1. Over the last decade, Banilla has firmly established itself as a prominent leader in the skilled gaming and amusement industry.  Banilla is widely recognized for its innovation and commitment to quality, attributes that have earned the company a strong reputation among distributors, route operators, players, and competitors. Banilla markets its flagship suite of video gaming systems under the "FUSION" brand ("**FUSION Games**"). Banilla's use of the "FUSION" brand, among others, reflects its ongoing dedication to excellence and its status as an industry leader. Banilla has invested substantial time, effort, and resources in developing and protecting its brand and intellectual property, including the FUSION Games, and is committed to safeguarding these valuable assets.

2.      This is a civil action arising from Defendant's infringement of Banilla's intellectual property rights, including, but not limited to, its exclusive rights in and to the FUSION brand of video gaming systems. Defendant has engaged in the unauthorized use, reproduction, and exploitation of Banilla's FUSION mark (the "**FUSION Mark**"), Banilla's federally registered BANILLA GAMES trademark (the "**BANILLA GAMES Mark**"), and Banilla's federally registered PLUNDERIN' PIRATES trademark (the "**PLUNDERIN' PIRATES Mark**"), thereby violating Banilla's exclusive rights in these marks.

3.      Banilla brings claims for copyright infringement pursuant to the United States Copyright Act of 1976, as amended (the "**Copyright Act**"), 17 U.S.C. § 101 et seq. These claims arise from Defendant's purchase, public display, and commercial exploitation of counterfeit FUSION Games, which infringe Banilla's copyrighted works. Banilla seeks all remedies available under the Copyright Act, including, but not limited to, preliminary and permanent injunctive relief, recovery of Banilla's actual damages, Defendant's profits attributable to the infringing conduct, and such other monetary and equitable relief as the Court deems just and proper.

4.      Banilla further asserts claims for trademark counterfeiting and infringement under Section 32(1) of the Lanham Act[1], 15 U.S.C. § 1114(1); for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); for trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and for related claims of unfair competition and trademark infringement under the statutory and common law of the State of Texas.

5.      Banilla also brings claims for trade secret misappropriation under the Defend Trade Secrets Act ("**DTSA**"), 18 U.S.C. § 1836, and under the Texas Uniform Trade Secrets Act

---

[1] Hereinafter, the term "Lanham Act" refers to 15 U.S.C. §§ 1051 *et seq*.

("**TUTSA**"), Tex. Civ. Prac. & Rem. Code §§ 134A.001-134A.008. These claims are based on Defendant's acquisition, use, and commercial exploitation of counterfeit FUSION Games, which incorporate pirated and unlawfully modified versions of Banilla's proprietary software. Banilla seeks all remedies available under the DTSA and TUTSA, including injunctive relief, damages, and any other relief the Court deems appropriate.

## THE PARTIES

6.      Banilla is a corporation duly organized and existing under the laws of the State of North Carolina with its principal place of business in Greenville, Pitt County, North Carolina. Banilla creates, designs, develops, and manufactures software, artwork, and audiovisual effects for various electronic games in various markets, including, but not limited to, the skill-based redemption and electronic pull-tab markets.

7.      Defendant, Kwang "Jim" No Lee, is an individual who does business as US Touch Game Tech, located at 9945 Harwin Drive, Houston, Texas 77036.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over the claims in this action that arise under the Lanham Act and Copyright Act pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

9.      This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332(a), as Banilla and Defendant are citizens of different states and the claims asserted herein exceed $75,000.00.

10.     This Court has supplemental jurisdiction over the claims in this action which arise under state law pursuant to 28 U.S.C. § 1367(a), since the state law claims are so related to the

federal claims that they form part of the same case or controversy and arise from a common nucleus of operative facts.

11.    This Court has personal jurisdiction over Defendant because, on information and belief, Defendant resides in this district, has operated, distributed, or placed infringing products within this State and this district, has committed tortious acts within this State and this district, and has otherwise established contacts within this State and this district sufficient to permit the exercise of general and specific jurisdiction.

12.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and under the provision of 28 U.S.C. § 1400(a) because Defendant resides in this district.

## FACTUAL ALLEGATIONS

### I.    Banilla's Business and Intellectual Property

13.    Since 2013, Banilla has invested millions of dollars in the development of its high-quality and reliable electronic games of skill. Multiple teams of dedicated in-house personnel, acting within the scope of their employment, are employed to develop, from scratch, all design and software components of the FUSION Games. These components include, but are not limited to, the games' source code, object code, two-dimensional and other artwork, static images, and other visual and audiovisual effects that contribute to the distinctive and enjoyable experience of the FUSION Games for end-users. All of the artwork, static images, and audiovisual effects in Banilla's games are original—i.e., created by the in-house game design teams—and none of that artwork, static images, and audiovisual effects are copied from any third-party author in the creation of these products.

14.    Banilla serves as the exclusive distributor of the FUSION Games. Through Banilla's distribution efforts, the FUSION Games, including the Copyrighted Works (as defined below), are made available to end-users, who subsequently place the FUSION Games in their respective places of business.

15.    To obtain the FUSION Games, including the Copyrighted Works (as defined below), an individual or business must purchase the FUSION Games directly from Banilla or from another authorized reseller to whom Banilla has sold legitimate FUSION Games (e.g., Rite Touch Distribution).

16.    Banilla has invested substantial time, effort, and resources in marketing the FUSION Games to its customers and providing exemplary customer service to those customers who purchase legitimate copies of the FUSION Games.

17.    Banilla's games are highly regarded by its customers (e.g., the operators who purchase the games) and end-users (e.g., the individuals who play the games), each of whom have come to expect high-quality products and superior customer service from Banilla.

18.    In furtherance of its brand-building efforts, Banilla has used the BANILLA GAMES Mark in commerce throughout the United States, including Texas, continuously since February 6, 2014. The BANILLA GAMES Mark has been used in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for various board, nudge, skill, redemption, and amusement game markets.

19.    Banilla continues to invest heavily in its intellectual property rights and has consistently and vigorously protected those rights.

20.    Banilla is the owner of the intellectual property rights in the software for the FUSION Games, which comprises a series of game suites. These intellectual property rights

include multiple federal copyright registrations issued by the United States Copyright Office for the computer files and associated audiovisual effects used in the FUSION line of video games, including, but not limited to, the following:

- Number PA0002206908, obtained on October 11, 2019, for Banilla's FUSION video game (the "**Fusion Copyrighted Work**").

- Number PA0002218349, obtained on October 11, 2019, for Banilla's FUSION 2 video game (the "**Fusion 2 Copyrighted Work**").

- Number PA0002218347, obtained on October 11, 2019, for Banilla's FUSION 3 video game (the "**Fusion 3 Copyrighted Work**").

- Number PA0002293309, obtained on May 24, 2021, for Banilla's FUSION 4 video game (the "**Fusion 4 Copyrighted Work**").

- Number PAu004088597, obtained on May 24, 2021, for Banilla's FUSION 5 video game (the "**Fusion 5 Copyrighted Work**").

- Number PA0002368424, obtained on July 19, 2022, for Banilla's FUSION Link video game (the "**Fusion Link Copyrighted Work**").

Banilla also owns federal copyright registrations for the two-dimensional artwork used in its individual game titles, including, as relevant here, the game title "Plunderin' Pirates," Number PA0002533777, obtained on March 19, 2025 (the "**Plunderin' Pirates Copyrighted Work**"). Hereinafter, the above copyrighted works will be referred to collectively as the "**Copyrighted Works**."

21.    In addition, Banilla has continuously used the trademark "FUSION" in commerce throughout the United States since at least February 28, 2017, in connection with the creation, distribution, offering for sale, sale, marketing, and promotion of its FUSION Games, including the Copyrighted Works at issue in this action. Attached hereto as **Exhibit 1** are representative samples of materials evidencing Banilla's use of the FUSION Mark in connection with the FUSION Games.

22.    Since its introduction, the FUSION Games have become among the most popular skill games available in the United States, enjoying widespread recognition and use by players, locations, route operators, and resellers. *See, e.g.,* https://banillagames.com/product-category/platforms/skill-games/fusion-series/; *see also* https://banillagames.com/product-category/platforms/skill-games/fusion-link/. As a result of Banilla's longstanding and continuous use of the FUSION Mark, and the high quality of its goods and services, the FUSION Mark has become widely known and famous throughout the United States, including Texas. The FUSION Mark is closely identified with Banilla and represents substantial and valuable goodwill.

23.    By virtue of its widespread, continuous, and exclusive use of the FUSION Mark to identify its products in the board, nudge, skill, redemption, and amusement game markets, and to identify Banilla as the source of those products, Banilla owns valid and subsisting state statutory and common law rights in and to the FUSION Mark.

24.    Banilla is the owner of the following valid and subsisting United States Trademark Registrations on the Principal Register of the United States Patent and Trademark Office ("**USPTO**"):

    a.    "BANILLA GAMES," Registration No. 7,187,484, which registration issued on October 10, 2023, as shown in **Exhibit 2**.

    b.    "PLUNDERIN' PIRATES," Registration No. 8,095,915, which registration issued on January 6, 2026, as shown in **Exhibit 3**.

25.    Banilla has used the BANILLA GAMES Mark in commerce throughout the United States, including  Texas, continuously since at least February 6, 2014, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets. The registration

for the BANILLA GAMES Mark covers the following goods and services: "Recorded computer software for playing games of chance relating to games, card games, slot games, video games, gaming, gambling, casino, bingo, instant win games, lottery and betting activities; [r]ecorded computer application software for video gaming consoles and video gaming machines for playing games of chance relating to games, card games, slot games, video games, gaming, gambling, casino, bingo, instant win games, lottery and betting activities; [r]ecorded computer software for enabling social gaming by uploading, posting, showing, displaying, tagging, blogging, sharing or otherwise providing electronic media or information regarding electronic gaming, entertainment, and general gaming interest via the Internet or other communications networks with third parties; [v]ideo gaming consoles for playing card games, slot games, video games, gaming, gambling, casino, bingo, instant win games, lottery and betting activities; [v]ideo gaming machines for playing computer games; [i]nstallation, maintenance, modification, and updating of electronic gaming and gambling systems being game machines and hardware; [p]roviding an internet site featuring news and information in the field of gaming; [e]ntertainment services, namely, providing online games of chance and social games being computer games; [e]ntertainment services, namely, conducting casino gaming contests and tournaments."

26.     Banilla has used the PLUNDERIN' PIRATES Mark in commerce throughout the United States, including Texas, continuously since at least August 16, 2019, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

27.     As a result of its widespread, continuous, and exclusive use of the BANILLA GAMES Mark and PLUNDERIN' PIRATES Mark in commerce to identify its products in the board, nudge, skill, redemption, and amusement game markets, and to identify Banilla as the

source of those products, Banilla owns valid and subsisting federal statutory and common law rights in the BANILLA GAMES Mark and the PLUNDERIN' PIRATES Mark.

28.     Banilla has made significant expenditures in promoting and marketing goods and services provided under the BANILLA GAMES Mark and the PLUNDERIN' PIRATES Mark. As a result of Banilla's exclusive use and promotion of the BANILLA GAMES Mark and the PLUNDERIN' PIRATES Mark in connection with its goods and services, Banilla has developed and now owns substantial and valuable goodwill symbolized by the BANILLA GAMES Mark and the PLUNDERIN' PIRATES Mark.

29.     Due to these efforts, and the goodwill and recognition Banilla has established, Banilla has achieved substantial sales of its products for the various board, nudge, skill, redemption, and amusement game markets under both the FUSION, BANILLA GAMES, and the PLUNDERIN' PIRATES Marks throughout the United States, including Texas.

30.     Banilla's FUSION, BANILLA GAMES, and the PLUNDERIN' PIRATES Marks are distinctive to both the consuming public and within the relevant trade.

31.     As a result of its significant investment in the promotion and marketing of the FUSION Games, Banilla is recognized as a global leader in the electronic gaming industry. As a global leader, Banilla protects its business and products through best practices, including the registration of copyrightable works, registration of trademarks and service marks, protection of trade secrets, and other measures to safeguard its intellectual property. These efforts have resulted in Banilla developing and owning substantial and valuable goodwill.

32.     Banilla also takes commercially reasonable measures to ensure the confidentiality of its proprietary software, including the software associated with the Copyrighted Works. Specifically, Banilla: (a) maintains and protects its source code as a trade secret; (b) implements

measures to prevent end-users from accessing source code, including through a process known as "obfuscation;" and (c) actively protects the artwork used in its computer files and software, including the Copyrighted Works, by creating, registering, and maintaining copyrights in both the static images and the audiovisual effects used in the software.

## II.    Banilla's Trade Secrets

33.    Computer software, like the FUSION Games, consists of both source code and object code. Source code is written by computer programmers in a human-readable programming language using a text editor. Object code is the result of compiling source code into machine-readable instructions that can be executed by a computer.

34.    With respect to the source code and object code associated with the FUSION Games, the source code is stored in multiple "library" files that are accessible only to employees who need access for their job responsibilities and who have executed binding confidentiality agreements. Pursuant to these agreements, employees are strictly prohibited from disclosing any information concerning the "confidential information," including source code. These confidentiality obligations survive the termination of employment.

35.    A computer program known as a compiler is used to convert the human-readable "library" files into machine-readable object code. This object code forms the basis for the executable files that launch each of the FUSION Games.

36.    The compiler includes an obfuscation feature, which introduces redundancies and complexities into each version of the FUSION Games to prevent tampering and reverse engineering of the source code. The source code for each of the FUSION Games, including the Fusion 4 Game, which is the subject of the Fusion 4 Copyrighted Work, has been obfuscated.

37.    A specific "library" file controls the activation mechanism ("**Activation Mechanism**"). The Activation Mechanism is responsible for verifying the authenticity of the FUSION Games.

38.    Banilla employs commercially reasonable measures to protect the confidentiality and integrity of its "library" files, including both the source code and the Activation Mechanism. These "library files" are confidential and proprietary to Banilla and are maintained as trade secrets (collectively, the "**Source Code**").

39.    For example, access to these "library" files is strictly limited to employees who have a legitimate need to know the information and who have executed enforceable confidentiality agreements.

40.    Moreover, because the Source Code is obfuscated, it is not generally known outside of Banilla and further allows Banilla to maintain the Source Code as a trade secret. Indeed, because of this obfuscation of the Source Code, it would be very difficult for someone, even a sophisticated computer programmer, to recreate the exact logic used in the Source Code. Furthermore, because the Source Code is obfuscated, it is not generally known outside of Banilla. This obfuscation further enables Banilla to maintain the Source Code as a trade secret. As a result of this obfuscation, it would be extremely difficult, even for a sophisticated computer programmer, to replicate the exact logic contained within the Source Code.

41.    Thus, Banilla's "library" files derive independent economic value by remaining secret. Indeed, Banilla's Source Code, and its secrecy, allows Banilla to maintain its competitive advantage in the marketplace.

42.    Banilla manufactures and distributes a variety of skill-game and amusement devices, including the FUSION-branded devices, which are currently in their sixth iteration.

### III.    Defendant's Counterfeiting and Infringing Activities

*Copyright Infringement*

43.    Banilla is the exclusive distributor of the FUSION Games. Banilla sells FUSION Games to end-users, who, in turn, use them in their places of business.

44.    Before Defendant's conduct detailed herein, consumers associated the FUSION Games with Banilla.

45.    On or about October 2, 2025, Plaintiff learned through its own due diligence that Defendant was in possession of and was using, selling, and/or distributing at least two (2) counterfeit, pirated, or hacked version of the Fusion 4 Copyrighted Work through Defendant's business commonly known as "US Touch Game Tech."

46.    Upon information and belief, Defendant purchased and/or vended at least two unauthorized, pirated, and/or hacked version of the Copyrighted Works on the secondary market (the "**Illicit Games**"). Neither the cabinet nor the Illicit Games therein were created, sold, or authorized or licensed by Banilla. Upon further information and belief, Defendant has either purchased, sold, and/or vended additional Illicit Games or has the means, motive, and capability to obtain, provide, and use more Illicit Games.

47.    Upon information and belief, the Illicit Games are the result of a third party's unauthorized actions, including unpackaging, decompiling, and de-obfuscating Banilla's trade secrets. Through these actions, the third party obtained access to multiple proprietary "library" files belonging to Banilla, which contain Banilla's confidential source code and trade secrets. In doing so, the third party misappropriated Banilla's trade secrets by circumventing the deliberate and intentional security measures implemented by Banilla to prevent unauthorized access to its proprietary information.

48.     Upon information and belief, as a result of the aforementioned conduct, the third party was able to bypass Banilla's validation logic by unlawfully altering the Activation Mechanism. This enabled the third party to market and sell unauthorized, modified versions of the Illicit Games, thereby infringing upon Banilla's intellectual property rights.

49.     The hacked/pirated/counterfeit Illicit Games are sold for significantly less than genuine products. A genuine game board for the Fusion 4 Game costs $4,995.00. Upon information and belief, Defendant paid significantly less for the Illicit Games and offered the Illicit Games for sale at a price of $430.00 each. This model allows the misappropriating third party, Defendant, to undercut Banilla's market share and steal Banilla's profits. Additionally, Defendant can increase his profits at the expense of Banilla. By purchasing Illicit Games at a cheaper price, Defendant is able to maximize profits by receiving a larger portion of gross revenue, and ultimately secure locations that otherwise would use Banilla's legitimate machines.

50.     Defendant's Illicit Games are nearly identical to the Copyrighted Works, in that they present the same game play and almost identical artwork. However, the Illicit Games perform at slower speeds than the Copyrighted Works, and the artwork in the Illicit Games present dimmer artwork than the Copyrighted Works. Additionally, the game board that runs the Illicit Games are designed completely different from Banilla's genuine game boards.

51.     Banilla owns all right, title, and interest in and to the copyrights covering the audiovisual effects that tie together the artwork used in the Copyrighted Works, and in this instance the Fusion 4 Copyrighted Work, which effects depict a series of related images that, when shown in a sequence, impart an impression of motion and the expression fixed in motion.

52.     In addition, Banilla owns all right, title, and interest in and to the copyright covering the individual game title "Plunderin' Pirates" that is incorporated into the Fusion 4 Copyrighted Work.

53.     The Copyrighted Works are wholly original, and Banilla is the exclusive owner of all right, title, and interest in the Copyrighted Works and the owner of all the exclusive rights associated with those Copyrighted Works, including, but not limited to, the right to reproduce its software in copies and to distribute those copies to the public. Additionally, 17 U.S.C. § 106(5) also provides Banilla, as copyright holder for "motion picture or other audiovisual works," the exclusive right to display the work publicly.

54.     Defendant has published and publicly displayed unauthorized, unlicensed, and counterfeit reproductions of the Copyrighted Works, without Banilla's authorization, consent, or knowledge, and without any compensation to Banilla. In particular, Defendant has published and publicly displayed an unauthorized, unlicensed, and counterfeit version of Fusion 4 Copyrighted Work.

*Trademark Infringement*

55.     Banilla also owns the BANILLA GAMES Mark, which appears at the start-up of each FUSION Game.

56.     Without authorization from Banilla, Defendant has used the BANILLA GAMES and PLUNDERIN' PIRATES Marks, or a counterfeit and unauthorized imitations thereof that are confusingly similar to consumers and end-users (the **"Infringing Marks"**), in commerce within the United States, including within the state of Texas, in connection with the marketing, distribution, and operation of the Illicit Games.

14

57.    Defendant's Illicit Games are confusingly similar to authentic FUSION Games sold and distributed by Banilla, differing only in the speed of game play.

58.    Each time an Illicit Game is placed, publicly displayed, or put into operation, and each time such a machine is started, Defendant employs the Infringing Marks.

59.    Defendant's infringing actions have caused, or are likely to cause, confusion, mistake, and deception among relevant consuming public (e.g., consumers and end-users) as to the source, sponsorship, or affiliation of the Illicit Games, falsely suggesting an association with or endorsement by Banilla and deceiving the relevant consuming public into believing that the Illicit Games originate from, are associated or affiliated with, or otherwise authorized by Banilla.

*Damages from Copyright and Trademark Infringement*

60.    As a result of Defendant's actions, Banilla has been damaged, and continues to be damaged, by the unauthorized publication and public display of counterfeit versions of the Copyrighted Works, including, but not limited to, the Fusion 4 Copyrighted Work. Furthermore, Banilla has been damaged, and continues to be damaged by Defendant's unauthorized use of the Infringing Marks.

61.    Defendant has never accounted to or otherwise paid Banilla for his improper, illegal, and unauthorized use of counterfeit versions of the Copyrighted Works or the BANILLA GAMES and PLUNDERIN' PIRATES Marks.

62.    Defendant's acts are causing, and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla, for which Banilla has no adequate remedy at law.

*Trade Secret Misappropriation*

63.    Banilla considers its Source Code confidential information and a trade secret and has taken reasonable steps to keep its Source Code secret.

15

64.    Defendant purchased the Illicit Games, which actually misappropriated Banilla's Source Code.

65.    Defendant's actions, including Defendant's use, marketing, and/or selling of the Illicit Games, also misappropriates Banilla's Source Code.

66.    Defendant's foregoing actions, including the improper access to and use of Banilla's Source Code, were done without Banilla's permission.

67.    Defendant's acts are causing, and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla, for which Banilla has no adequate remedy at law.

68.    Defendant's acts have caused, and will continue to cause, Banilla to lose profits.

69.    Consumers likely will associate Defendant's Illicit Games with Banilla because, *inter alia*, Defendant's Illicit Games mimic in every way the experience provided by the FUSION Games.

70.    Defendant has engaged in an unfair method of competition and unfair trade practice.

71.    Defendant's acts are causing, and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla, for which Banilla has no adequate remedy at law.

72.    Upon information and belief, Defendant's acts are willful with the deliberate intent to trade on Banilla's goodwill, cause confusion and deception in the marketplace, and divert potential sales of Banilla's authentic FUSION Games to the Defendant.

### COUNT I
### Copyright Infringement Pursuant to 17 U.S.C. §§ 106, 501

73.    Banilla incorporates Paragraphs 1 through 72 by reference.

74. The Copyrighted Works are motion picture/audiovisual effects containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

75. Banilla is the exclusive owner of all exclusive rights under copyright in the Copyrighted Works. Banilla owns valid copyright registrations, issued by the United States Copyright Office, for the Copyrighted Works, specifically the Fusion 4 Copyrighted Work. *See* Ex. 2.

76. Multiple teams of dedicated in-house personnel, acting within the scope of their employment, created the Copyrighted Works. None of these employees have any contractual rights to ownership of the Copyrighted Works and, as such, the Copyrighted Works constitute works made for hire.

77. Banilla is the owner of all rights, title, and interest in and to the asserted copyrights underlying the Copyrighted Works.

78. The Copyrighted Works were registered within five (5) years of the first publication of the Copyrighted Works.

79. By making the Illicit Games available for use by end-users, Defendant has publicly displayed and published pirated, hacked, and/or counterfeit copies of the Fusion 4 Copyrighted Work, and has done so without Banilla's permission.

80. As a direct and proximate result of Defendant's infringement of Banilla's Fusion 4 Copyrighted Work, and pursuant to 17 U.S.C. § 503(a), this Court "may order the impounding . . . (A) of all copies or phonorecords claimed to have been made or used in violation of the exclusive right of the copyright owner; . . . (C) of records documenting the manufacture, sale, or receipt of

things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court."

81.     As a direct and proximate result of Defendant's infringement of Banilla's copyrights, Banilla is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c)(1), in an amount of up to $30,000.00, or up to $150,00.00 for a willful infringement, per copyright violation, with respect to Defendant's infringing use of the Fusion 4 Copyrighted Work, as well as the "Plunderin' Pirates," copyright or such other amount as may be appropriate under 17 U.S.C. § 504(c). Alternatively, at Banilla's election, pursuant to 17 U.S.C. § 504(b), Banilla shall be entitled to its actual damages, including Defendant's profits from the infringements, as will be proven at trial.

82.     In all events, Defendant's acts are causing, and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla, for which Banilla has no adequate remedy at law. Banilla is thus entitled to impoundment of the Illicit Games, preliminary injunction, and permanent injunction.

## COUNT II
## Federal Trademark Infringement
## Pursuant to 15 U.S.C. § 1114

83.     Banilla incorporates Paragraphs 1 through 82 by reference.

84.     Banilla owns the U.S. trademark registrations for the BANILLA GAMES and the PLUNDERIN' PIRATES Trademarks listed in **Exhibits 2 and 3**.

85.     Defendant's use of the BANILLA GAMES and the PLUNDERIN' PIRATES Trademark to promote the sale of goods differing materially from authorized goods sold under the BANILLA GAMES Trademark and the PLUNDERIN' PIRATES Trademark by Banilla (e.g., the

Illicit Game(s)) is likely to cause confusion, deception, and mistake by creating the false and misleading impression that those goods are materially identical to his authorized counterparts.

86.     Defendant's use of the BANILLA GAMES Mark and the PLUNDERIN' PIRATES Mark violates Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause, a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Banilla's goodwill and reputation as symbolized by the BANILLA GAMES and the PLUNDERIN' PIRATES Trademark, for which Banilla has no adequate remedy at law.

87.     Defendant has caused, and is likely to continue causing, substantial injury to the public and to Banilla, and Banilla is entitled to injunctive relief and to recover Defendant's profits, as well as Banilla's actual damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT III
## False Designation of Origin and
## Unfair Methods of Competition Pursuant to 15 U.S.C. § 1125

88.     Banilla incorporates Paragraphs 1 through 87 by reference.

89.     Banilla is the exclusive distributor of the FUSION Games, which games are sold by Banilla as either software boards or in freestanding gaming cabinets.

90.     Defendant has marketed, publicly displayed, presented, and offered for use to consumers the Illicit Games, which mimic the Fusion 4 Copyrighted Work, in interstate commerce. The Illicit Games were neither authorized, created, sold, licensed, sponsored, nor distributed by Banilla.

91.     Defendant is passing off the Illicit Games as those authorized, created, licensed, sold, and/or distributed by Banilla.

92.     Defendant's Illicit Games are likely to cause confusion, mistake, or deception of the consuming public as to the origin, source, sponsorship, or affiliation of the Illicit Games. Actual and potential consumers, upon encountering Defendant's Illicit Games, are likely to mistakenly believe that Defendant's Illicit Games originate with, or are sold, licensed, approved, sponsored by, or otherwise affiliated with Banilla.

93.     By his unauthorized conduct, use of counterfeit copies of the Fusion 4 Copyrighted Work, as well as the "Plunderin' Pirates" copyright, and unauthorized use of Plaintiff's trademarks, Defendant has engaged in unfair competition with Banilla, false designation of origin, and misleading description and representation of fact in violation of the Lanham Act, 15 U.S.C. § 1125(a).

94.     Banilla is entitled to an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees and costs, under 15 U.S.C. §§ 1117, as well as pre- and post-judgment interest.

95.     Defendant's conduct is causing immediate and irreparable harm and injury to Banilla, and to its goodwill and reputation, and will continue to both damage Banilla and confuse the public unless enjoined. Banilla has no adequate remedy at law. Banilla is thus entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

**COUNT IV**
**Common Law Unfair Competition**

96.     Banilla incorporates Paragraphs 1 through 95 by reference.

97.     This claim is for passing off, unfair competition, and deceptive trade practices in violation of the common law of Texas.

98.     Defendant's actions in passing off his Illicit Games as those authorized, created, licensed, sold, and/or distributed by Banilla are likely to cause and actually are causing confusion,

mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendant's Illicit Games, thereby causing harm to the reputation and goodwill of Banilla.

99.     Defendant has profited and been unjustly enriched by revenue from the Illicit Game(s) that Defendant would not otherwise have made but for his unlawful conduct.

100.     Banilla has been damaged by Defendant's passing off and unfair or deceptive acts or practices.

101.     As a result of Defendant's passing off and unfair trade practices, Banilla is entitled to an award of its damages, as well as injunctive and equitable relief.

## COUNT V
## Common Law Trademark Infringement

102.     Banilla incorporates Paragraphs 1 through 101 by reference.

103.     This claim is for common law trademark infringement against Defendant based on his sale, offering for sale, use, placement, marketing, and/or public display of the Illicit Games bearing Banilla's FUSION Mark.  Banilla is the owner of all common law rights in and to Banilla's FUSION Mark.

104.     Defendant, without authority, has used and is continuing to use Banilla's FUSION Mark, and counterfeit imitations thereof, in connection with the sale, offering for sale, use, placement, marketing, and/or public display of the Illicit Games, thereby inducing Defendant's customers and/or clients, and others, to believe, contrary to fact, that the Illicit Games placed/sold by Defendant emanate or originate from Banilla, or that Banilla has approved, permitted, licensed, or otherwise associated itself with Defendant and his Illicit Games. Defendant's acts have damaged, impaired, and diluted the goodwill symbolized by Banilla's FUSION Mark, to Banilla's immediate and irreparable damage.

105.    Actual and potential consumers, upon encountering Defendant's Illicit Games, are likely to be confused about the source of origin of the Illicit Games and will likely mistakenly believe that Defendant's Illicit Games originate with, or are sold, licensed, approved, sponsored by, or otherwise affiliated with Banilla.

106.    Defendant's unauthorized use of Banilla's FUSION Mark or counterfeit imitations thereof, which are either identical or confusingly similar to Banilla's FUSION Mark, in connection with the advertising and sale of FUSION Games or Illicit Games, is likely to cause confusion, mistake, or deception as to the source of Defendant's Illicit Games and constitutes infringement of Banilla's FUSION Mark under the common law of Texas.

107.    Defendant has used Banilla's FUSION Mark on his Illicit Games that were not manufactured by or authorized by Banilla, and, therefore, Defendant has deliberately attempted to deceive and mislead consumers.

108.    Defendant, through his continued and unauthorized use of Banilla's FUSION Mark, is unfairly benefiting from and misappropriating Banilla's goodwill and reputation, resulting in serious, substantial, and irreparable injury to the Banilla and the public.

### COUNT VI
### Misappropriation of Trade Secrets
### Pursuant to 18 U.S.C. § 1836(b)

109.    Banilla incorporates Paragraphs 1 through 108 by reference.

110.    Banilla's confidential information includes trade secrets and/or other proprietary information that derives independent economic value from not being known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

111.    Banilla's confidential and trade secret information has been and continues to be the subject of reasonable measures to keep such information secret.

112.    Defendant misappropriated such confidential and trade secret information of Banilla in connection with the distribution and sale of the Illicit Games.

113.    Defendant, at the time of use, knew, or had reason to know the Illicit Games and the confidential and trade secret information used to create the Illicit Games were derived from or through a person who had utilized improper means to acquire such information.

114.    As a result of Defendant's misappropriation, Banilla has been and continues to be damaged and irreparably injured, including, without limitation, the loss of sales and profits it would have earned but for Defendant's actions, and damage to Banilla's reputation among potential and existing customers, business partners, investors, and in the industry in general.

115.    Defendant's misappropriation of confidential and trade secret information has caused and will continue to cause Banilla's irreparable and substantial injury and, therefore, cannot be fully redressed through damages alone.  An injunction prohibiting Defendant from further use or disclosure of Banilla's confidential and trade secret information is necessary to provide Banilla with complete relief.

## COUNT VII
## Violation of Texas' Uniform Trade Secrets Act

116.    Banilla incorporates Paragraphs 1 through 115 by reference.

117.    Without Banilla's consent or permission, and in violation of the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code §§ 134A.001-134A.008. Defendant misappropriated Banilla's confidential and proprietary trade secrets, including, but not limited to, its Source Code.

118.    Banilla's confidential and trade secret information is not generally known to or readily ascertainable by proper means to other people.

119.    Defendant, at the time of use, knew, or had reason to know, the Illicit Games and the confidential and trade secret information used to create the Illicit Games were derived from or through a person who had utilized improper means to acquire such information.

120.    Defendant misappropriated Banilla's confidential information and trade secrets, including, but not limited to, its Source Code, by utilizing the Illicit Games through marketing, use, and either selling, or offering to sell, the Illicit Games into the open market.

121.    The aforementioned trade secrets have independent economic value from not being generally known to other persons.

122.    Banilla has taken reasonable precautions to maintain its confidential and trade secret information as confidential information, including, but not limited to, limiting access to such confidential and trade secret information.

123.    In violation of the TUTSA, Defendant misappropriated Banilla's trade secrets to benefit himself.

124.    As a result of Defendant's actions, Banilla has been damaged, and continues to be damaged, by the unauthorized reproduction, publication, distribution, public display, and sale of the Illicit Games. Defendant has never accounted to or otherwise paid Banilla for his use of the Illicit Games.

125.    Defendant's acts are causing, and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla, for which Banilla has no adequate remedy at law.

126.    Defendant's actions have caused, and will continue to cause, Banilla to lose profits.

127.    Banilla is entitled to actual damages as a result of Defendant's misappropriation or a reasonable royalty for Defendant's misappropriation.

128.    As a result of Defendant's misappropriation, Banilla is entitled to an award of its damages, costs, reasonable attorneys' fees, as well as injunctive and equitable relief.

WHEREFORE, Plaintiff prays of the Court as follows:

1.    For judgment that Defendant Kwang "Jim" No Lee:

(a)    Has violated the Copyright Act, 17 U.S.C. §§ 101, *et seq.*;

(b)    Has violated the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a);

(c)    Has engaged in unfair competition in violation of the common law of Texas;

(d)    Has violated 18 U.S.C. § 1836(b);

(e)    Has engaged in trademark infringement in violation of the common law of Texas; and violated state law, Chapter 16 of the Texas Business and Commerce Code, and Texas Penal Code § 32.23; and

(f)    Has violated the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code §§ 134A.001-134A.008, Chapters 16 and 17 of the Texas Business and Commerce Code, and Texas Penal Code § 32.23.

2.    That an injunction be issued enjoining and restraining Defendant Kwang "Jim" No Lee and each of his officers, agents, employees, attorneys, and all those in active concert or participation with him from:

(a)    Defendant's continued use, publication, and display of the PLUNDERIN' PIRATES Mark and BANILLA GAMES Mark;

(b)     Defendant's continued use, publication, and display of the Copyrighted Works, namely the Fusion 4 Copyrighted Work and the "Plunderin' Pirates" copyright;

(c)     Defendant's continued deceptive practices, including selling, marketing or passing off the Illicit Games in interstate commerce; and

(d)     Defendant's use of Banilla's trademarks, intellectual property, and confidential information, including the Illicit Games.

3.      For the entry of an order directing Defendant Kwang "Jim" No Lee and all other persons, firms, or corporations in active concert or privity or in participation with Defendant, to deliver up to Banilla all products, advertisements, promotional materials, packaging, and other items in his possession or under his control bearing the Copyrighted Works, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503(b).

4.      For an assessment of: actual damages, plus the amount of Defendant's profits attributable to the infringement(s), or in the alternative, an assessment of statutory damages, as authorized by 17 U.S.C. § 504(c) in an amount no less than $150,000.00 for Defendant's infringement of the Copyrighted Works.

5.      For an assessment of: actual damages, plus the amount of Defendant's profits attributable to the infringement(s), or in the alternative, an assessment of statutory damages, as authorized by 15 U.S.C. § 1117(c) in an amount no less than $4,000,000.00 for Defendant's willful infringement of the PLUNDERIN' PIRATES Mark and BANILLA GAMES Mark.

6.      For an assessment of: (a) damages suffered by Banilla, pursuant to 15 U.S.C. § 1117(a); (b) an award of Banilla's costs and attorneys' fees to the full extent provided for by 15

U.S.C. § 1117; and (c) profits, damages, and fees, to the full extent available, pursuant to 18 U.S.C. 1836(b) and/or Tex. Civ. Prac. & Rem. Code §§ 134A.004 and 134A.005.

7.    For a judgment against Defendant in an amount to be determined at trial, but not less than $4,150,000.00 plus interest and costs as allowed by law.

8.    For any damages awarded to Banilla as allowed by law for Defendant's violations.

9.    For costs and reasonable attorneys' fees, as allowed by law.

10.    For such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMAND

Banilla respectfully demands a trial by jury on all claims and issues so triable.

Dated this 28th day of January 2026.        Respectfully submitted,

By: _/s/ Robert Wm. Best_____
Robert Wm. Best, State Bar No. 00787075,
SDTX Bar No. 1561719
WHITEFORD, TAYLOR & PRESTON LLP
249 Central Park Avenue, Suite 300-91
Virginia Beach, Virginia  23462
Telephone:    (757) 271-9752
Facsimile:    (757) 271-9737
E-Mail:    rbest@whitefordlaw.com

Stephen M. Faraci, Sr., SDTX Bar No. 3598047
*ATTORNEY IN CHARGE*
Robert N. Drewry, SDTX Bar No. 3906869
WHITEFORD, TAYLOR & PRESTON L.L.P.
1021 E. Cary Street, Suite 2001
Richmond, Virginia 23219
Telephone:    (804) 977-3307
Facsimile:    (804) 977-3298
E-Mail:    sfaraci@whitefordlaw.com
E-Mail:    rdrewry@whitefordlaw.com

*Attorneys for Banilla Games, Inc.*

## VERIFICATION

STATE OF NORTH CAROLINA

COUNTY OF PITT

    Marc C. Downing, being duly sworn, deposes and says that he is the Chief Counsel and

Senior Director of Compliance for Banilla Games, Inc. and as such is authorized to make this

verification that he has read the foregoing VERIFIED COMPLAINT AND JURY DEMAND and

the same is true, except as to those matters and things stated on information and belief, and, as to

those, he believes them to be true to the best of his knowledge and belief.


                                        Marc C. Downing
                                        Chief Counsel and
                                            Senior Director of Compliance
                                        Banilla Games, Inc.

STATE OF NORTH CAROLINA

COUNTY OF PITT

    Sworn to (or affirmed) and subscribed before me this day by Marc C. Downing, Chief

Counsel and Senior Director of Compliance of Banilla Games, Inc.


Date: January 28, 2026

                                            *Signature of Notary Public*

My commission expires: 11/03/ 2030

                                        SAUNDRA CANNON
                                    Notary Public, North Carolina
                                      Pitt County
                                      My Commission Expires
                                      November 03, 2030

29